## In re ADLER.

(District Court, W. D. Tennessee. June 29, 1900.)

BANKRUPTCY—REFUSAL TO CONFIRM COMPOSITION—APPEAL.

Under Bankr. Act 1898, § 25, allowing appeals in bankruptcy proceedings from the courts of bankruptcy to the circuit court of appeals. "from a judgment granting or denying a discharge," no appeal lies from a refusal of the court of bankruptcy to confirm a composition offered by a bankrupt to his creditors, since no certificate or decree of discharge is either granted or denied in proceedings for the confirmation of a composition, and such appeal is contrary to the general scheme of the act.

B. M. Jackson, for bankrupt.
Thomas M. Scruggs, for opposing creditors.

HAMMOND, J. The bankrupt having offered a composition to his creditors, his application for a confirmation was refused by the court upon the specifications of a creditor in opposition thereto. Thereupon he prayed an appeal.

Composition, as a feature of a system of bankruptcy, was unknown to our American legislation until the act of 1874, c. 390, § 17 (18 Stat. 182). Historically, it will be found to have been doubted whether such a feature was within the constitutional grant of power to establish a uniform system of bankruptcy; the subject being so distinctively apart from that of bankruptcy, as generally understood at the time of our constitution. See In re Reiman, 11 N. B. R. 21, Fed. Cas. No. 11,673; Id., 13 N. B. R. 128, Fed. Cas. No. 11,675; Loveland, Bankr. 549, § 242. So far as I am advised, there has been no authoritative judicial determination of that constitutional question; but the very absence of a provision for composition, and the reluctance of congress to put it into our system, show how separated the provisions for it are from the general scheme of the bankruptcy statute, and how necessary it is, in construing the act of congress, to keep the independence of the two in mind. They have no relation to each other.

The constitutional grant, ex necessitate, must be the foundation of either; and the bankruptcy structures of the act must be, by like necessity, a co-existent framework, within which or superposed on which the composition structure must rest; but this for reasons of constitutional integrity, and for no other reason whatever. This dependence is purely structural, and otherwise composition with creditors, authorized by a bankruptcy statute, or imposed forcibly by it upon unwilling creditors, is as independent of a system of bankruptcy as composition at common law would be. Indeed, congress takes advantage of the bankruptcy statute to permit, encourage, or compel a common-law composition. The word "discharge" has no technical, common, or appropriate meaning in the law of common or voluntary composition; nor would it have in an ordinary statute, by a legislature with plenary power to pass it, authorizing creditors to get together and adopt a composition on such terms as the statute might prescribe, voluntary or compulsory. The word "release" would exactly describe the transaction, technically and in common parlance. Or, less technically, but with equal common significance of meaning and acceptance of understanding, the word "satisfy" or "acquit" would define that which was done. And it may be conceded that the word "discharge" would somewhat synonymously express the transaction. Yet, when that word is used in a statute authorizing a debtor to "compound" his debts by an agreement, voluntary or enforced, with his creditors, which statute at the same time establishes "a system of bankruptcy," it borrows, not unnaturally, a reflected light by association with a technical term of similar import and identical form familiar to all bankruptcy statutes; one having a definite and distinctive meaning in the law of bankruptcy, however, which it has and can have nowhere else; quite as distinctive, indeed, as the most limited term used in the law of real property; one peculiarly technical in its meaning when used in bankruptcy statutes; and one likely to confuse the thought when used elsewhere in relation to analogous effects, but altogether dissimilar conditions of legal right, as well as legislative phraseology. This borrowed light of association must be discarded for a proper understanding of the use of the word "discharge" in the "composition" sections of the bankruptcy statute of 1898. The bankrupt is effectually discharged from all his debts by either process, undeniably,—by agreement with his creditors, voluntary or partly voluntary and partly compulsory, called a "composition," or, without any agreement, by the compulsory grant of a discharge in bankruptcy. But, except in this ultimate effect, there is not one element even of similarity in the two processes,—neither in the form nor in the substance. The dictionaries define "composition" as a compact or agreement, the settlement or adjustment of a matter of controversy; and they quote from Shakespeare, pertinently to our present inquiry:

"Thus we are agreed;
I crave our composition may be written
And sealed between us."

It is this compact or agreement which the debtor must plead, if sued, as a release of his debt. This is manifest, because he has noth-

ing else to plead. If the composition be confirmed, the statute commands that the bankruptcy proceedings shall be dismissed; if not confirmed, the estate shall be administered in bankruptcy. Bankr. Act 1898, § 12e. This shows that the composition is separate from the bankruptcy by the act itself, except as a mere foundation for it. There is no decree of discharge or other direction by the court in that behalf,—none whatever. Form No. 62, prescribed by the supreme court (18 Sup. Ct. xlvii.), is only that: "It is therefore hereby ordered that the said composition be and is hereby confirmed." Form No. 63 (18 Sup. Ct. xlviii.) only directs the distribution of the confirmation fund. Not one word in either as to a discharge of the debtor. Nor in form No. 61 (18 Sup. Ct. xlvii.), which is the application for confirmation of composition, nor in form No. 60 (18 Sup. Ct. xlvi.), which is the bankrupt's petition for a meeting of creditors to consider the acceptance of the proposed composition. It is strange, if the idea is sound that these proceedings are equivalent to a discharge, or are to be considered as the granting or denying a discharge; that the supreme court did not insert apt words in the order giving effect to it as a discharge, and in all these forms adapt them to that end. Now, if any creditor forced by the composition to accept less than his claim should reply to the plea of payment and satisfaction that he had been forced by the act of congress to take the less sum; that it was not within the power of congress to so compel him; that the bankruptcy statute, in respect of its provisions for composition, was not within the grant in that behalf, being as to such composition clauses only an artificial hook on which to hang the exercise of a power entirely outside of any system of bankruptcy, as such,—he would raise the constitutional question already suggested, which caused congress to hesitate about inserting such features in a bankruptcy statute. The distinction insisted on here is therefore not unimportant, and the statute should be construed with regard to it. On the other hand, the bankruptcy proceedings carry with and within themselves the primary and technical idea of "a discharge," which is to be "granted" or "denied," as expressed in the provisions of the statute for appeals, which are to be as in equity cases, and which are carefully and with manifest purpose limited to three fundamental subjects in bankruptcy,—bankruptcy, as such, and not having the remotest reference to the outside and outlandish subject of composition by agreement or compact. Act 1898, § 25a. It may be that this agreement is reached by a partly enforced assent of recalcitrant creditors, but none the less it is a compact, and in law there is an implied assent thereto by all of them.

This discharge in bankruptcy is as old as the original conception of the system, or nearly so, because it did not obtain in the very earliest of the English statutes, although it has become in the American legislation quite the chiefest concern or motive for the statutes that have been passed. Hil. Bankr. p. 227, § 1, et seq. In the old books the bankrupt is called after his discharge "a certificated bankrupt"; referring to that "certificate" signed by the commissioners and "allowed" by the lord chancellor, which afforded him his protection from arrest, or which he might plead in bar, or which the lord chancellor might also refuse. Id. p. 228, § 2, et seq., and notes; Id. p. 244, §

16; Id. p. 245, §§ 18, 19. It was here in these old English statutes, and the practice under them, that the discharge became technically understood everywhere to mean precisely that thing which is allowed or refused or granted or denied, namely, the certificate, or the decree of discharge itself, duly certified, in the modern statutes and practice. It is the same in all our American statutes and practice, only, with that habit of condensation which comes of frequent and familiar use, instead of saying he is a certificated bankrupt, or that he has been granted or denied his certificate of discharge, or that he pleads his certificate of discharge, we say that he is discharged in bankruptcy, that he pleads his discharge, that he has been granted a discharge, or that his discharge was denied or refused, as occasion may require. The force of this may be seen by comparing the statutes. But the thing that is meant by all these modern expressions, whether we find them in the statutes or elsewhere, is that which was originally meant, namely, that decree and the certificate of it which, ipsissimis verbis, he pleads in his defense, and which he carries or keeps with him for such uses, as evidence of his release, and which is in itself his discharge. There is nothing like this in the machinery of the composition. There the release is purely a matter of contract, the discharge being nothing more or less than the legal effect of the contract or composition, which is not granted by the court, but only confirmed; neither is it denied, but only not approved or not confirmed. It derives no legal effect from the action of the court; takes from the court's action no quality or element of a grant from it or from the statute, but only the completion of its validity by the court's approval. Subsection "c" of section 14 is only declaratory of the legal effect at common law of the compact between the bankrupt and his creditors that he will give and they will take a stipulated sum in payment or satisfaction of their debts; each for himself agreeing to this, voluntarily or involuntarily. Here are the words:

"The confirmation of a composition shall discharge the bankrupt from his debts, other than those agreed to be paid by the terms of the composition and those not affected by a discharge." Act 1898, § 14c.

The provision is wholly superfluous. The legal effect of the contract and its confirmation by the court would have been the same if the subsection had been left out altogether. Neither does the definition of the word "discharge," as given in section 1, subd. 12, alter this manifest construction of section 14c, if that definition be written therein. It says:

" 'Discharge' shall mean the release of a bankrupt from all his debts which are provable in bankruptcy, except such as are excepted by this act." Act 1898, § 1, subd. 12.

The debts comprehended in a composition are not "provable in bankruptcy," literally speaking, because after the confirmation the bankruptcy proceedings are dismissed, but evidently this phrase is intended to include or describe all the debts which might have been proven in regular proceedings, whether they have been so proven or not; and the scheme of composition undoubtedly comprehends a release of all that character of debts, whether they had taken part in the composition or not, for by section 12 of the act only those creditors

are required to "accept in writing" whose claims "have been allowed," which means, of course, that they must have been already proved in bankruptcy before the proceeding for confirmation begins. These must accept in writing, and that writing binds them to the release; and, as to all others, they are in law presumed to have assented to the release by default, so to speak,—by neglecting to prove and have their claims allowed. This gives full effect to the use of the word "discharge" in section 14c, by the application of the definition in section 1, subd. 12. Act 1898, § 12b; Id. § 14c; Id. § 1, subd. 12. Any expansion by the use of this definition in interpreting the word "discharge" in section 25, regulating appeals, would be incongruous and violate that limitation of all the definitions themselves which is contained in section 1a, which says:

"The words and phrases used in this act and in the proceedings pursuant hereto shall, unless inconsistent with the context, be construed as follows," etc. Act 1898, § 1a; Id. § 25a.

It would be inconsistent with the context to so interject the confirmation of a composition into section 25, regulating appeals, for the obvious reason that no certificate or decree of discharge is either granted or denied by the statute or by the court, in any form whatever, during the proceedings in pursuance thereof in the matter of confirming or refusing to confirm the composition, nor does the scheme contemplate any, as it so plainly does in the course of proceedings in bankruptcy. Read section 14a; also, section 14b; also, section 15; also, sections 16, 17; also, sections 64c, 64f; also, sections 21f, 21g. And the inconsistency of context will abundantly appear from the bare statute when these sections are compared and contrasted, they being too long for quotation here.

But the construction put upon all these sections by the supreme court in prescribing the general orders in bankruptcy and the officials forms promulgated is conclusive on this point, and brings out more boldly the incongruity which would result, and the inconsistency of the context produced, by bringing a composition order within the purview of section 25 as to appeals. A mere reading of these orders and forms supports the construction of the act hereinbefore made. Read general order No. 31 (18 Sup. Ct. ix.), requiring a petition for discharge; also, form No. 57 (18 Sup. Ct. xlv.), prescribing the form of that petition; also, the notice on it to creditors; also, general order No. 32 (18 Sup. Ct. ix.), directing the opposing creditor to enter his appearance and file his specification; also, form No. 58 (18 Sup. Ct. xlvi.), prescribing the form of specification in opposition to a discharge; also, form No. 59 (18 Sup. Ct. xlvi.), prescribing the form of the discharge; again, general order No. 32, prescribing the same rule precisely for opposing a composition and filing the specification; then form No. 60, for a petition for a meeting of creditors to consider composition; then form No. 61, of an application for its confirmation; then form No. 62, of an order confirming it; then form No. 63, of the order of distribution of the composition fund. Not one word of any discharge by a decree of the court upon the composition either to be granted or to be denied; not one syllable indicating that the court is to declare the legal effect of the compact of composition by decreeing

a discharge, or in any way treating the proceeding as one for that purpose. This legal effect is left to the common-law effect, and to that which it is declared by the statute that the compact shall have. If the court had supposed that a discharge was to be granted or denied, some apt words would have been used in these forms of the decree, just as they were used in the immediately preceding forms for the order granting the ordinary discharge so plainly referred to in section 25, regulating appeals. The two are so distinct in every form of treatment that the notion of an appeal for the composition proceedings becomes plausible only in the borrowed light of association heretofore referred to in this opinion. That light produces the confusion on the subject. This demanded appeal is contrary to the general scheme of the statute in the matter of regulating appeals, and that general superintendence and revision of all proceedings provided for by section 24 of the act. Particularly does this appear when we mark the distinction between the act of 1898 and that of 1867, as may be seen by perusing the notes of decisions instructively collated in the ninth edition of Bump on Bankruptcy, coming down within a year of the repeal of the old act, and also the digest of all the cases, found in the Digest of the Federal Cases, under that title. By the old act the circuit courts, which sat at the elbow, so to speak, of the courts of bankruptcy, had jurisdiction by appeal or writ of error in cases at law or in equity arising under the act, where the debt or damages was more than $500; that is to say, of suits by or against the assignee in cases of persons claiming an adverse interest or owing debts to the bankrupt,—the suits of which the circuit court, indeed, had concurrent original jurisdiction, and precisely those suits of which the supreme court and the circuit courts of appeal now have jurisdiction by appeal or writ of error under section 24a of the act of 1898. Besides these, the circuit courts had jurisdiction by appeal of only the allowance or rejection of the claims of creditors during the bankruptcy proceedings. Rev. St. § 4980; Bump, Bankr. (9th Ed.) 353, 354. This last was the only appeal allowed in any strictly bankruptcy proceeding; the others being only suits at law or in equity by or against outside parties, and between them and the assignee. This last and sole appeal from anything done in the bankruptcy proceedings is by the act of 1898 continued as an appeal. Section 25a. cl. 3.

But under the act of 1867, sitting at the elbow of the bankruptcy courts, as before said, the circuit courts had the most absolute, comprehensive, and plenary supervision of everything done in the bankruptcy court, by a "general superintendence," exercised by petition of review and revision. Rev. St. § 4986; Bump, Bankr. 361. This included everything, whether error of law or fact, and under it the circuit courts were courts of bankruptcy as much as the districts courts. Id. When the amendment of 1874 interjected the reluctant jurisdiction of composition, tacked on to bankruptcy proceedings, it was ruled that composition proceedings could be reviewed, of course in law or fact, by the circuit court, under this general power of superintendence. In re South Boston Iron Co., 4 Cliff. 343, Fed. Cas. No. 13,183; Bump, Bankr. 675, and notes. So might any other case or question arising in the district court sitting as a court of bankruptcy,

whether of law or fact. But the act of 1898 changes this very materially, and for the manifest purpose of limiting the jurisdiction so that the supreme court and the courts of appeals shall not be overwhelmed with the burden of determining every disputed question of law or fact arising in the courts of bankruptcy. Sitting as they do far away from the several districts, and proceeding as they do, it would overcrowd them to confer the same general superintendence as that conferred on the circuit courts by the act of 1867. Therefore by sections 24a and 25a, the same jurisdiction by appeal or writ of error is given over the suits by and against assignees and adverse parties outside the proceedings in bankruptcy, and by appeal over the allowance and rejection of the claims of creditors. There is also an extension of the right of appeal to the adjudication or refusal to adjudicate the debtor a bankrupt, and the granting or denying him his discharge. These appeals are plenary as to errors of law or fact, as in a court of equity. Act 1898, §§ 24, 25. But, when it comes to the superintending jurisdiction, it is confined to matters involving errors of law, and all questions of error of fact are excluded, for the reasons already stated. Act 1898, § 24b. The appeal demanded in this case is purely to review a disputed question of fact,—whether it was to the best interest of the creditors to accept the offered compromise, namely. The bankrupt has, within the purview of the law, no interest in this question. The proceeding by composition proceeds solely on the theory of promoting the interest of the creditors, and not that of the bankrupt. It is a controversy really between creditors, and not with him, and that is the controversy the bankrupt seeks to carry into the court of appeals. And, unless he has some ulterior motive, like that of protecting the alleged fraudulent vendees under the disguise of this appeal, for example, he has no concern in the question. His discharge is not involved; for, if the composition be not approved by the court, he may be discharged, nevertheless, in the regular way, and just as certainly released of his debts. It is true that, if the composition be confirmed, he has, by operation of the agreement in writing required to accomplish it, a release from his debts, and he does not need a discharge in the regular way; nor can he get it, for the bankruptcy proceedings are to be dismissed. Act 1898, § 12a. But this is only an incidental, or at most a secondary, result, and the composition is not projected for that purpose or in that interest. So, again, it may be for the best interest of the bankrupt and those who hold disputed titles from him that the bankruptcy proceedings should be dismissed and the composition approved; but, again, this is only incidental, and not at all an object to be promoted by or with which the bankruptcy statute is concerned. Neither he nor they have a right to demand this benefit to them, nor the benefit of a release by this method to him; the theory of the statute being that this is all a matter solely pertaining to the creditors and their interest. And yet by this proposed appeal he and they are demanding the incidental benefits not within the care of the statute,—all in his name, and upon the strained construction that by the nonapproval of his offer his discharge is denied. This cannot be the purpose of the appeal provided for by section 25a, cl. 3. He might as well claim that the refusal

of his creditors to approve his offer of a composition is a denial of his discharge. It so operates just as much as the disapproval of the court. It requires the combined action of court and creditors in the process. As well might any other disputed question of fact be carried to the court of appeals, among the vast interests involved in the proceedings in bankruptcy. All he has a right to demand is his discharge in the regular way, and, if that be denied him, he may appeal under this section; but he cannot have two appeals under it,—one on the disapproval of the composition, and the other on the denial of his certificate of discharge. If the appeal on this controversy is permissible, it should be taken by the parties to the controversy, namely, the assenting creditors as against the opposing creditors, who are to determine whether there ought to be a composition or proceedings in the ordinary way. The court has determined that it is better for the creditors that they shall proceed in the regular way. If there be an appeal, it is theirs, but the statute has not given the bankrupt an appeal from that decision, neither by direction nor indirection. The bankrupt has not lost anything which he has a right to claim, and has no grievance to be redressed by appeal. Having gone into voluntary bankruptcy, he has only the right to proceed in the regular way. He may offer to proceed in another way, but he has not at all been given by the statute any right to demand that the case shall be dismissed and a composition substituted, because, forsooth, if a composition be adopted he would be released of his debts. That important right has not been indicated by apt language, but is claimed as an inference only upon a right to offer. If it be not adopted, he may still be released. Therefore his discharge has not been affected by the failure of his offer of composition. Not having a right to demand a composition, he has not the right to an appeal if it fail. In other words, it is optional, wholly, with the creditors and the court whether he shall be discharged by a composition. He has only a bare right to offer. This seems to me the plain meaning of the statute.

There is one case under the act of 1867 which is almost a precedent for this ruling on the construction of the statute. That act provided that corporations might have the benefit of the statute, "but no allowance or 'discharge' shall be granted to any corporation or joint stock company, or to any person or officer thereof." Rev. St. § 5122; Bump, Bankr. 676, 776. On exactly the same argument used here in support of the demand for appeal, it was urged there that, inasmuch as a corporation could not be allowed a discharge under the above-quoted clause, it could not have the benefit of the composition amendment of 1874, because that amendment provided that a ratification should operate as a satisfaction of the debts, and this was, in effect, a discharge, and therefore inhibited as above quoted. Mr. District Judge Brown, since and now a justice of the supreme court, held that this was unsound, saying, "The word 'discharge,' used in section 5122, evidently applies to a discharge by order of the court upon a petition of the debtor." In re Weber Furniture Co., 13 N. B. R. 529, Fed. Cas. No. 17,330; Act 1867 (18 Stat. 182); Bump, Bankr. (9th Ed.) 675, 676, and notes. In Purvine's Case it was decided that questions of fact are concluded in the bankruptcy court. In re Purvine, 37 C. C.

A. 446, 96 Fed. 192. Whether it be to the interest of the creditors to confirm a composition is purely a question of fact. The scope of the scheme for appeals and for superintendence and revision, and the distinctions between the acts of 1867 and 1898, are instructively considered in Re Abraham, 35 C. C. A. 592, 93 Fed. 767, 781, et seq; Re Richards, 37 C. C. A. 634, 96 Fed. 935; Re Rouse, Hazard & Co., 91 Fed. 96, 98.

Finally, it is a fair test of the right to the appeal demanded to suggest whether, if the offered composition had been confirmed by the court, the opposing creditor could have appealed on the ground that the bankrupt had been granted a discharge, upon the same argument that is made here in favor of the bankrupt's demand because he has been denied a discharge. This must be answered in the affirmative, or neither has such right of appeal. If either has the right, then we have the result that the question of fact whether it is to the best interest of the creditors to accept or reject the composition may always be transferred by appeal to the circuit court of appeals, because the question of the bankrupt's release under the composition from his debts is ultimately involved. So, too, all questions of fact arising under section 13a, upon a proceeding to set aside the composition, or under section 15a, upon a proceeding to revoke a discharge, may be appealed by either side on the same argument that the question of discharge is ultimately involved. See In re Rudnick (D. C.) 93 Fed. 787. Or, broader still, every controversy about any fact affecting the discharge (like those arising, for example, under section 29, upon a criminal indictment of the bankrupt for having fraudulently concealed his property, or having made a false oath, or appropriated, embezzled, or spent unlawfully any of the property belonging to his bankrupt estate) may be likewise appealed, because, by section 14b, the conviction of the bankrupt would directly involve the denial of his discharge, and his acquittal would indirectly involve the granting of his discharge. Indeed, there is no end to this elasticity of construction claimed for section 25a, cl. 3, and no protection for the appellate courts against shoveling into them almost every contention of fact arising in the bankruptcy proceedings, since almost any of them may be shown, in a sense, to affect the question of granting or denying a discharge. If a motion be made to compel a bankrupt to amend his schedules on the ground that he has fraudulently concealed some article of his property, which he denies, and the charge of concealment be decided either way, it affects the question of his discharge. If not res adjudicata, of itself, of his right to a discharge, an adverse determination would, in effect, be a denial of the discharge, to use the language of the argument here considered. Appeal denied.