## In re ABRAHAM.

## BERNHEIMER v. BRYAN, Marshal.

### (Circuit Court of Appeals, Fifth Circuit. April 25, 1899.)

### No. 797.

1. BANKRUPTCY—APPEAL AND REVIEW—APPEALABLE ORDERS.

An order or decree of the district court in bankruptcy, on summary proceedings to try the title to property in the possession of a purchaser from the bankrupt's voluntary assignee, and claimed by creditors as belonging to the estate, is not appealable, under section 25 of the bankrupt act; but the remedy of the party aggrieved is by petition for the exercise by the circuit court of appeals of its jurisdiction to "superintend and revise, in matter of law, the proceedings of the inferior courts of bankruptcy," under section 24b.

2. SAME.

Where an appeal from an order of the district court in bankruptcy was allowed by the judge thereof, and all parties concerned had due and actual notice, and the record brought up presents all the facts in issue and the action of the court thereon, but the order in question was not appealable, the circuit court of appeals may permit the appellant, in lieu of his appeal, to file a petition for revision of the proceedings in the district court, and, on due notice thereof to parties entitled, proceed in the exercise of its revisory jurisdiction, or may, under special circumstances, consider the case on its merits in like manner as if a formal petition had been presented and due notice thereof given.

3. SAME—PETITION FOR REVISION.

In analogy to the rules governing the allowance of appeals and writs of error, a petition for revision by the circuit court of appeals of proceedings in the district court in bankruptcy may be presented to, and allowed by, the judge of the district court or any one of the judges of the circuit court of appeals. It should show, with reasonable clearness, the action of the court below which the petitioner seeks to have revised, and reasonable notice thereof should be given to the adverse party.

4. SAME—JURISDICTION OF COURTS OF BANKRUPTCY—SUMMARY PROCEEDINGS.

Pending the hearing on a petition in involuntary bankruptcy against a debtor who had made a general assignment for the benefit of his creditors, petitioning creditors applied for an injunction forbidding the assignee to sell the property in his possession, but the writ was refused, without prejudice, for the reason that the petition therefor was not verified and no bond was given; whereupon the assignee, before the adjudication in bankruptcy, but without leave of the bankruptcy court, sold the property at public auction to appellant. After adjudication, on petition of creditors, the district court ordered the marshal to seize the property in the hands of appellant, and ruled the latter to appear within 10 days and propound his claim to the property in question, and, on his appearance and answer, adjudged that he had no title to the property, and ordered him to pay over the proceeds of portions thereof which he had sold at retail. *Held*, that the court of bankruptcy had no jurisdiction to try the title to the property in question on summary proceedings of this character.

5. SAME.

Where an insolvent debtor makes a general assignment for the benefit of creditors, and is afterwards adjudged bankrupt on that ground, it seems that the trustee in bankruptcy cannot recover from the assignee the property assigned, or its proceeds, on summary petition in the court of bankruptcy, but must proceed by plenary action, at law or in equity, in the proper state or federal circuit court.

Per Pardee and McCormick, Circuit Judges. Parlange, District Judge, dissenting.

6. SAME—UNLAWFUL SEIZURE OF PROPERTY—DAMAGES TO CLAIMANT.
    Where petitioning creditors in a case of involuntary bankruptcy, after
the adjudication, procured from the district court an order under which
the marshal seized property in the hands of a third person, who had pur-
chased the same from the assignee in a voluntary general assignment pre-
viously made by the bankrupt, and the circuit court of appeals, on appeal
by such purchaser, adjudged that the issuance of such order was un-
warranted, and the seizure thereunder unlawful, and that possession of
the goods must be restored to the claimant, *held*, that he should be allowed
costs, counsel fees, and damages occasioned by the seizure and detention
of the property, to be fixed by the district court and paid by the petition-
ing creditors, and secured by a lien in his favor on the distributive share
of the bankrupt's estate to which such creditors should be entitled.
    Parlange, District Judge, dissenting.

Appeal from the District Court of the United States for the Middle
District of Alabama.

On December 12, 1898, the following petition was presented to the
district court of the United States for the Middle district of Alabama,
in bankruptcy:

"Your petitioners, the undersigned creditors of D. Abraham, the bankrupt
in this cause, respectfully show unto your honor that heretofore, to wit, on
the 12th day of December, 1898 (same day), upon a petition heretofore filed
by them in this cause, the said D. Abraham was by this court adjudicated
a bankrupt, within the true intent and meaning of the act of congress entitled
'An act to establish a uniform system of bankruptcy throughout the United
States.' That on, to wit, the 29th day of October, 1898, and prior to ·said
adjudication, the said D. Abraham executed and delivered unto H. C. David-
son a deed of assignment by which he executed unto said Davidson all of his
property and effects, for the equal benefit of his creditors. That, upon the
delivery of said deed of assignment to him, the said H. C. Davidson entered
upon the execution of said trust. That afterwards, as required by the laws
of the state of Alabama, the said Davidson filed an inventory of all of the
property coming into his possession as assignee in the office of the register
in chancery of Montgomery, Ala., by which inventory it is shown that the
estate of the said D. Abraham consisted mainly of a stock of goods, wares,
merchandise, and book accounts located in a storehouse, No. 106 Dexter ave-
nue. That appraisers were appointed by the said register in chancery to
appraise said property, and, in accordance with said appointment, they ac-
cordingly appraised all the effects of the said D. Abraham and made a return
thereof to said chancery court. That the appraisement of said property, as
fixed by said· appraisement, is the sum of, to wit, $7,900. That on, to wit,
the 7th day of November, 1898, your petitioners filed in this court their orig-
inal petition, praying that said Abraham be adjudicated a bankrupt, upon the
ground that he executed and delivered said deed of assignment; and, upon
the filing of said petition in this court, your petitioners are advised by counsel,
and therefore aver, that this court obtained jurisdiction over said estate of
said Abraham, and it was the duty of the said H. C. Davidson, as assignee of
said Abraham, to hold all of the property and effects of the said Abraham in
his possession, subject to the orders and decrees of this court; but the said
Davidson, disregarding the authority and jurisdiction of this court, proceeded
to sell and dispose of said property, and did dispose of the same, for a sum
greatly less than the appraisement as made by said appraisers. That the
purchasers of said property have been in possession of the said stock of goods,
wares, and merchandise for several days, selling and disposing of the same
at retail trade, and at such prices as said purchasers claim to be bankrupt
prices. Your ·petitioners are informed and believe, and upon information
aver and state, that said property was sold for greatly less than its value, and
that, unless this court makes an order requiring that the said property be
taken immediate possession of, your petitioners and all other creditors of the
said Abraham will be greatly damaged ·thereby, and the pro rata share to

which they are entitled out of the effects of the said D. Abraham will be greatly lessened. Your petitioners therefore pray that your honor make an order requiring L. J. Bryan, the marshal of the Middle district of Alabama, to take charge of all the property and effects belonging to the said D. Abraham, at the time of the making of his deed of assignment to the said H. C. Davidson, wherever the same may or can be found; and further requiring the said H. C. Davidson to deliver to the said L. J. Bryan, as marshal, the books of accounts, papers, choses in action, and any other property or effects which may be in his possession belonging to the said D. Abraham; and further authorizing the said L. J. Bryan, as marshal, to take possession of all of the property sold by the said H. C. Davidson, as assignee, to L. Bernheimer, or to any one else, and which is particularly located in said storehouse known as 'No. 106 Dexter Avenue,' in the city of Montgomery, Ala.; and that the said L. J. Bryan, as marshal, be required to hold all of said property so coming into his possession until the further orders of this court."

On the foregoing petition, and on the same day it was presented, the court made the following order:

"The petition of A. C. Barler Manufacturing Co. et al., wherein they pray for an order in said cause requiring L. J. Bryan, the marshal of the Middle district of Alabama, to take possession of the property of the bankrupt in this case, coming on this day to be considered by the court; and it appearing from said petition that, after the filing of the original petition in this cause praying that said Abraham be adjudicated a bankrupt, H. C. Davidson, to whom the said D. Abraham had before the filing of the original petition made a deed of assignment for the benefit of all of the said Abraham's creditors, did sell and dispose of certain property and effects of said D. Abraham for a sum greatly less than its value, and without any authority or direction from this court, and that said property is now in possession of the purchasers and being disposed of by them; and it further appearing to the court from said petition that the creditors of the said D. Abraham will be greatly damaged unless said property is taken possession of by this court; and it further appearing from said petition that it is necessary to the interest of the creditors of the said D. Abraham that this court take possession of all the property and effects of the said D. Abraham: Now, therefore, it is the opinion of the court that said petition should be granted; and it is accordingly ordered, adjudged, and decreed that L. J. Bryan, the marshal for the Middle district of Alabama, take immediate possession of all the property and effects owned by the said D. Abraham at the time of the making of said deed of assignment, wherever the same may or can be found; and, further, that he demand and receive from H. C. Davidson, as assignee, the books of accounts, papers, or any other effects of said Abraham which may be in the possession of the said Davidson as assignee: and, further, that he demand, receive, and take possession of all the property sold by the said Davidson as assignee to L. Bernheimer, or any one else, and which may now be particularly located in that certain storehouse on Dexter avenue, in the city of Montgomery, known as 'No. 106,' and that the said L. J. Bryan, as such marshal, hold all of such property, so coming into his possession, until the further orders of this court."

Under this order, and on the same day, the marshal seized the stock of goods then in the possession of Louis Bernheimer, the purchaser at the assignee's sale; and on the marshal's report of the seizure, and his petition for instructions in reference to his disposition of the goods, the court, on the next day, December 13, 1898, made the following order:

"This cause coming on to be heard on the petition of the marshal for instructions in reference to goods seized by him under a former order of this court, and the same being considered by the court, it is ordered that Louis Bernheimer be notified to appear before this court within 10 days from the date hereof, and propound any claim he has to the goods so seized, or to any part thereof, or, failing therein, that he will be decreed to have no claim or

right thereto. The marshal is directed to retain possession of all said goods until further orders of this court. The clerk of this court will issue, and cause to be served on said Bernheimer, a copy of this order."

On December 17, 1898, the petitioning creditors submitted to the bankruptcy court the following:

"Your petitioners, the undersigned creditors of D. Abraham, respectfully show unto your honor that on, to wit, the 29th day of October, 1898, the said D. Abraham did make and deliver a deed of assignment to H. C. Davidson, who is a resident citizen of Montgomery city and county, and state of Alabama and district aforesaid; that thereafter, on, to wit, the 7th day of November, 1898, your petitioners did file in this honorable court a petition alleging that the said D. Abraham had committed an act of bankruptcy in executing said deed of assignment, and asked that the said D. Abraham be declared and adjudged a bankrupt under the act of congress entitled 'An act to establish a uniform system of bankruptcy throughout the United States'; that thereafter, to wit, on the 12th day of December, 1898, said petition coming on to be heard, after a consideration of the evidence, the said D. Abraham was by this court duly adjudged a bankrupt, within the meaning of said act aforesaid. Your petitioners further show that, after the filing of their said petition in bankruptcy against the said D. Abraham, and in disregard of the proceedings therein pending, the said H. C. Davidson did, as your petitioners are informed and believe, on or about, to wit, the 17th day of November, 1898, turn over to and deliver to one L. Bernheimer all of the stock of goods which belonged to the estate of the said D. Abraham, and which were located in storehouse No. 106 Dexter avenue, in the city of Montgomery, Ala., said district aforesaid; that thereafter the said L. Bernheimer, who is a resident citizen of the city and county of Montgomery, state of Alabama, and said district aforesaid, did, in disregard of the proceedings pending in this court, proceed to sell, transfer, and deliver, largely for cash, said stock of goods as aforesaid. Your petitioners are informed, and upon such information show, that the said stock of goods, at the time the said Bernheimer took possession thereof, was worth, to wit, the sum of about $10,000. Your petitioners are informed and believe, and upon such information show, that the said L. Bernheimer sold large quantities of said goods while the same were in his possession, to wit, from November 17, 1898, up to and during December 12, 1898, when the balance of said stock was taken, by an order of this court, into the hands of the marshal of this court. Your petitioners are informed and believe that the said L. Bernheimer received from said sales and transfers of goods which belonged to the estate of said D. Abraham large sums of money. Your petitioners are informed and believe, and upon such information show, that the said L. Bernheimer, at the time he took possession of said stock of goods, had knowledge of the proceedings in bankruptcy in this honorable court against the said D. Abraham. Your petitioners are advised by counsel, and upon such advice and information show, that the said L. Bernheimer, as against these petitioners in bankruptcy, did not and could not acquire title to the property of the said D. Abraham, and that said moneys so received by the said L. Bernheimer from sales and transfers of said property and goods belong to the estate of the said D. Abraham, bankrupt. The premises considered, your petitioners pray that an order may be issued by this honorable court directed to said L. Bernheimer, calling on him to file with the referee in bankruptcy, on a day named, a sworn statement of all moneys which the said L. Bernheimer has received from the sale or transfer of said goods of D. Abraham owned by him at the time of making his said deed of assignment, as well as such evidences of indebtedness as he may have received from any one for such sales, and that the said referee hold a reference to ascertain and report the correctness of such statement, and await the further orders of this court."

The record sent up to us does not expressly show what order was made by the bankruptcy court on this last application of the petitioning creditors. It, however, sufficiently appears, from the further action taken, that an order was granted in conformity with the prayer.

On December 22, 1898, Bernheimer submitted to the court the following:

"And now comes Louis Bernheimer, and in obedience to the command of said court issued on the 13th day of December, 1898, and served on said Bernheimer on said date, commanding him to appear before said court and propound his claim to the goods seized by the marshal of said court under a former order of said court in the said bankruptcy proceedings, and propounds his claim thereto, as follows: That on, to wit, the 29th day of October, 1898, the said David Abraham made a general assignment of all of his property, including said goods seized by said marshal while in the possession of claimant, for the benefit of his creditors; that one H. C. Davidson was named as assignee under said assignment, and was by the terms thereof relieved of giving any bond as such; that on the 7th day of November, 1898, certain creditors of the said Abraham filed their petition in this court asking that said Abraham be adjudged a bankrupt; that after said day and date the same creditors filed their petition in this court praying that said H. C. Davidson, as such assignee, be required to appear before said court, and show cause why he should not be restrained from selling the said goods so assigned to him; that, in obedience to the order issued by said court, said Davidson did appear before the said court, and, showing cause satisfactory to the court, said rule was discharged, and said court declined to make the order prayed for restraining him from selling said goods, on the ground that said petition was not sworn to and no bond given, and said petition was dismissed without prejudice; that thereupon said Davidson, as such assignee, proceeded to sell said goods at public auction for cash, in the city of Montgomery; that this claimant being advised by counsel learned in the law, and who were perfectly conversant with all the facts in the case, bought the said goods from the said Davidson at and for the price of three thousand five hundred dollars, which was a fair, just, and reasonable price therefor; that claimant paid the said Davidson, as such assignee, the full sum of three thousand five hundred dollars in cash for said goods, and went into immediate possession thereof, and has been in the possession of the same until he was deprived thereof by the said marshal under the orders of this court; that claimant never intended to interfere in any way with the process of this court, or with any property of said bankrupt, but was advised that he was at liberty to purchase said property under the sale made by said Davidson. Claimant represents to this honorable court that if he is deprived of these goods, and if the said Davidson is allowed to keep the money paid him by claimant as the purchase price of said goods, claimant's position in the premises will be one of great hardship and loss to him; that, under the terms of said assignment, said Davidson will be compelled to pay the money paid by claimant to him for such goods to the creditors of the said Abraham, including the said creditors who petitioned to have said Abraham declared a bankrupt, and the consequences will be that both the goods which the claimant purchased in perfect good faith and by advice of counsel will be held and sold again for the benefit of said creditors, and the money which claimant paid for said goods will also be used and paid out for their benefit. Claimant respectfully submits to the court his claim in this behalf. He asks the court's protection in the premises, and that it will issue such rules and orders in the premises as may be necessary to such protection. He further asks that the creditors of said bankrupt estate be remitted to the fund derived by said Davidson from claimant for the purchase price of said goods. Claimant prays, also, that in default of such order, or if he is mistaken in the relief prayed for, that your honorable court will issue a rule that the said Davidson be ordered to pay into this court the full amount derived by him from claimant as purchase money of said goods, and that same be paid over to claimant, who thereupon offers to rescind said purchase and to waive all further claim to said goods."

On December 24, 1898, Bernheimer made further showing to the bankruptcy court, as follows:

"Answer of L. Bernheimer, claimant, to petition requiring him to account for and turn over to the marshal proceeds of sale of certain goods, etc.: The

claimant, Louis Bernheimer, respectfully represents to the court that, as purchaser of the stock of goods formerly belonging to said bankrupt, under a sale thereof made by H. C. Davidson, to whom said bankrupt had assigned said goods, he entered into the possession thereof. That while in such possession, and in the regular course of trade, and before the marshal of this court, in obedience to its order heretofore issued, seized said goods, claimant sold a portion thereof, and received the proceeds of such sales. That the daily sales made by him of such goods were as follows: * * *; amounting in the aggregate to two thousand seven hundred sixty eight and $40/100$ dollars. That, at the time of the purchase by claimant from said Davidson, he also bought the exemptions allowed by law to said bankrupt under the laws of the state of Alabama and under the act of congress entitled 'An act to establish a uniform system of bankruptcy throughout the United States,' approved July 1, 1898. The amount of said exemption is one thousand dollars, which claimant, as such purchaser from said bankrupt, claims as exempt from any process for the payment of the debts of said bankrupt. Claimant claims all of said goods as his own under said purchase, as stated in his claim filed under the order of this court on the 22d day of December, 1898, but which was decided against him by this court on said date. And this answer is made without any prejudice to his claim to said goods, but as a part of the proceedings on his said propounded claim. That he has paid out of said sales, for expenses of clerks, insurance, and other necessary expenses, the sum of three hundred and ten and $10/100$ dollars, and returned twelve and $50/100$ dollars to purchasers, leaving a net balance of $1,434.80."

To the showings or answers thus made by Bernheimer the petitioning creditors demurred on the same day each was respectively filed, on the following grounds:

(1 and 7) Because he shows no title to the property which would be good against their rights; (2) because at the time of his alleged purchase the court of bankruptcy had acquired jurisdiction of the property; (3) because at the time of the sale by the assignee both the assignee and the purchaser had actual knowledge of the filing of the original petition of these petitioners and of the proceedings thereon pending; (4, 5, and 6) because the making of the deed of assignment was an act of bankruptcy, void as to these petitioning creditors; (8) because this court has no jurisdiction to try and determine questions between the assignee and the purchaser at the assignee's sale.

On December 24, 1898, the court of bankruptcy entered its decree as follows:

"The matter of the claim of Louis Bernheimer to certain goods in the possession of the marshal of this court, and to the proceeds of the sales of other goods made by said Bernheimer belonging to the estate of said bankrupt, coming on this day to be heard on the said claims and on the demurrers thereto filed by the petitioning creditors in said bankrupt proceedings, it is considered by the court that the said demurrers be, and the same are hereby, sustained; and the said Bernheimer declining to amend or plead further, and facts being made to appear to the satisfaction of the court, it is ordered, adjudged, and decreed that the said Louis Bernheimer acquired no title to the said goods, or to the proceeds of the sales thereof, made by him under the purchase of said goods from H. C. Davidson, as assignee of said bankrupt, superior to the title of the creditors of said bankrupt's estate. It is further ordered that the said Louis Bernheimer pay over to the marshal of this court, to await the further orders of this court, all the proceeds of the sales (as may be ascertained by the referee and approved by the court, as stated hereinafter) made by him of any of the goods purchased by him of said H. C. Davidson, as assignee of said bankrupt, D. Abraham; and that it be, and is hereby, referred to H. Booth, Esq., referee, to hold a reference, giving all parties due notice, and ascertain and report to this court the amount of such proceeds."

On the application and prayer of the purchaser, Bernheimer, for an appeal to the circuit court of appeals, and for the allowance of a supersedeas, the district court made the following order:

"And now, on December 24, 1898, it is ordered that the appeal and supersedeas be allowed as prayed for."

On the same day the judge approved the bond for appeal and supersedeas. The assignment of errors was filed on January 14, 1899.

Gordon Macdonald, for appellant.

G. F. Mertins, John D. Rouse, and Wm. Grant, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

McCORMICK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The assignment of errors is to the effect that the court erred in its rulings on the demurrers, and presents this question: Did the district court, as a court of bankruptcy, have jurisdiction to try the title to the goods involved in this controversy by summary proceedings, seizing the goods, and requiring Louis Bernheimer, the purchaser at the assignee's sale, by a rule entered against him to appear before that court within 10 days, and propound any claim he had to the goods, or any part thereof, or, failing therein, that he be decreed to have no claim or right thereto? The appellee moves to dismiss this appeal: (1) Because the decree sought thereby to be reviewed is not such a judgment as may be appealed from under the provision of the bankrupt act; (2) that the order or decree sought to be reviewed is a summary order, and not appealable to this court; (3) that the order or decree is not a final decree, and, for that reason, is not appealable.

By the first section of the bankrupt act of 1867 the district courts were constituted courts of bankruptcy, and were given original jurisdiction in all matters and proceedings in bankruptcy, which jurisdiction they were authorized to exercise as well in vacation as in term time, and it was made to extend to all cases and controversies arising between the bankrupt and any creditor or creditors who claimed any debt or demand under the bankruptcy; to the collection of all the assets of the bankrupt; to the ascertainment and liquidation of the liens and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all parties; to the marshaling and disposition of the different funds and assets so as to secure the rights of all parties, and due distribution of the assets among all the creditors; and to all acts, matters, and things to be done under and in virtue of the bankruptcy until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy. To which was added, by the act of 22d of June, 1874, that the court having charge of the estate of any bankrupt may direct that any of the legal assets or debts of the bankrupt, as contradistinguished from equitable demands, shall, when such debt does not exceed $500, be collected in the courts of the state where such bankrupt resides having jurisdiction of claims of such nature and amount. By the second section the several circuit courts of the United States were given a general superintendence and jurisdiction of all cases and questions arising under the act, and were authorized upon bill, petition, or other proper process of any party aggrieved to hear and

determine the case as a court of equity, except when special provision is otherwise made in the act. This power and jurisdiction was to be exercised either by the court or by any justice thereof, in term time or vacation. The circuit courts were also given concurrent jurisdiction with the district courts of all suits at law or in equity brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against the assignee touching any property or rights of property of the bankrupt, transferable or vested in such assignee. This last provision, as amended by the act of June 22, 1874, now appears as section 4979 in the Revised Statutes. By section 8 it was provided that appeals may be taken to the circuit courts in all cases in equity, and writs of error may be allowed from the circuit courts to the district courts in cases at law, under the jurisdiction created by the bankrupt act, when the debt or damage claimed amounted to more than $500; and any supposed creditor whose claim was wholly or in part rejected, or an assignee who was dissatisfied with the allowance of a claim, could appeal from the decision of the district court to the circuit court on certain terms, conditions, and limitations, not necessary to notice here. By section 9 it was provided that in cases arising under the act no appeal or writ of error shall be allowed in any case from the circuit courts to the supreme court of the United States, unless the matter in dispute in such case shall exceed $2,000. Amended by act of February 6, 1875, so as to read $5,000. At the time of the passage of this act the conditions in this country were unprecedented. The immense proportions of the Civil War, the suspension of specie payments, the volume of paper currency issued by the national treasury and national banks, the large disbursements by government, the destruction by abolition of property in slaves in the 15 states which had theretofore recognized such property in so many millions of colored people, the throes of reconstruction, and the morbid activity which the liberated energy of more than a million veteran soldiers, with faculties quickened and strung to the highest key by the intensity of the protracted civil strife, had stimulated, and for a time sustained, had brought our commercial interests to that agonizing crisis of almost universal bankruptcy which raised a clamor for speedy liquidation. To meet these transcendent conditions, the provisions of the act of 1867 went beyond the terms of any previous law. When the courts of bankruptcy were opened, the office of circuit judge had not been re-established. The dockets of the supreme court were large, and growing, and severely taxed the time and strength of the circuit justices. Their residence at the national capital then rendered them more remote from, and more difficult to be reached by, parties to bankruptcy proceedings than it would now. They could visit each district, at the most, once only in every two years, for such brief period and labors as their service on the supreme bench then permitted. On the 10th day of April, 1869, the office of circuit judge in each of the nine circuits was re-established, and in due time filled by appointment. Thereafter the general superintendence of the circuit court became more efficient, and the jurisdiction of those courts on appeal or writ of error acquired more practical value, and was more invoked. Immediately upon the tak-

ing effect of the act, the dockets of the courts of bankruptcy became crowded. The most able and careful judges of the district court, pressed by urgent conditions and argument, with little call or time to doubt, began to extend summary process and proceedings so as to meet all individual cases presented. The growing weight of precedent thus nourished by their own practically unreviewable or actually unreviewed decisions carried their jurisdiction to that point where a few years later it became burdensome and dangerous to all persons engaged in agricultural, manufacturing, or commercial pursuits, and dealing to any considerable extent on credit. By the aid of the court of bankruptcy, or without its aid, the efforts of individuals to better their position in trade and other industries caused a strong reaction to set in, and the conditions which had excused and rendered tolerable the exercise of exorbitant jurisdiction by the courts of bankruptcy began to disappear. Commercial transactions acquired a more healthy tone. With some variableness of symptoms, and occasional relapses, more or less severe, the country was steadily recovering, and approaching specie payment, and a sound normal basis of dealing and credit. The summary processes and proceedings in bankruptcy were no longer so much needed or used for the relief of honest debtors, or the protection of creditors against the fraudulent dealings of dishonest insolvents, but came to be used rather for the too rigorous enforcement of collections against honest and substantially solvent, but temporarily embarrassed, dealers. Provision had been made for the resumption of specie payments to take effect on January 1, 1879. On the 7th day of June, 1878, congress passed the act which repealed the bankrupt law, to take effect on September 1, 1878. Thereupon varying insolvent laws, embracing more or less bankruptcy features, were restored or established in most of the different states. The force of the bankruptcy features of these laws was, of necessity, limited in its operation to the territory of the respective states, except so far as it could be and was extended by the consent of creditors. It soon became apparent that the country had substantial need of a national act to establish a uniform system of bankruptcy throughout the United States. Strenuous efforts began to be made both in and out of congress to secure such action on its part as would meet this need. Numerous bills were drawn with elaborate care, studiously constructed on the lines of the previous law and the decisions under it. It was attempted to frame a bill that would be permanent in its beneficial operation, adjust itself to the varying conditions of trade, and be free from all oppressive features or needless rigor. This effort was maintained in congress from session to session, but the recollection of the effect of summary proceedings in bankruptcy under the act of 1867 was so vivid and repugnant that it prevented or delayed for a period of 20 years the action of congress, so much needed, and so urgently sought.

Some cogent reasons combined or coincided to lead the judges of the courts of bankruptcy to take and hold liberal views as to the extent of their jurisdiction in matters of bankruptcy. More than in other matters, this jurisdiction appeared to be the jurisdiction of the judge, as distinguished from that of the court. In these matters there

seemed to be little room, if any, for such distinction. At any point within his district, and at any time,—in term time or vacation,—in open court or in chambers, he was authorized to exercise this jurisdiction to an extent and in a manner well calculated to evolve the unconscious or conscious thought that he was the court of bankruptcy. The judge of the court of bankruptcy not only presided alone in the district court in the exercise of all the other jurisdiction of that court, but he could, and generally did, preside alone in the circuit court, and exercise all the original jurisdiction of that court, except its jurisdiction to take, on due application, a general superintendence of all cases and questions arising in the courts of bankruptcy under the bankrupt act. Thus, where original jurisdiction in bankruptcy proceedings could be conducted in a summary manner, the exercise of such jurisdiction was exclusively his, and in all matters affecting the bankrupt's estate, in which legal proceedings were required to be by plenary suit or action, when the same were pending in the circuit court, he could, and in actual practice generally did, preside alone. His action in these plenary causes in the circuit court could only be reviewed by the supreme court, and by it only in such cases as involved a matter of sufficient amount in value to support an appeal or writ of error. From many of the districts the supreme court was very far away in point of distance, and, whether far or near, the day at which it could reach and decide a case on appeal or writ of error was indefinitely remote. Therefore parties and counsel were reasonably inclined to acquiesce in the views of the judge of the court of bankruptcy, even where they were not (as they more often were than otherwise) interested, and urgent to extend his jurisdiction to meet the exigencies of the case they had or represented. However, after the lapse of some years, cases began to reach the dockets of the supreme court. And, after the substantial final settlement by the subordinate courts of the great bulk of the business that arose under the act, the supreme court began to reach the cases on its dockets which involved the construction of the act, and to announce decisions marking the boundaries of the jurisdiction it conferred, and the manner of procedure in its exercise. These decisions settled that most matters and proceedings in bankruptcy were to be heard and adjudicated in a summary way, but that the general jurisdiction thus to proceed did not extend to controversies by an assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee touching any property or rights of property of the bankrupt transferred to or vested in the assignee; that such controversies, where they could not be settled otherwise than by legal proceedings, could be prosecuted only by plenary suits at law or in equity. Smith v. Mason (Dec. Term, 1871) 14 Wall. 419. Of these plenary suits the circuit courts were given concurrent jurisdiction with the district courts of the same district. This language of section 2 necessarily implies, either that the district court had jurisdiction in such matters under the general grant in section 1, or it confers such jurisdiction on that court. It was held in Goodall v. Tuttle, 7 N. B. R. 193, Fed. Cas. No. 5,533, that section 2 did not confer it. It seems also to imply that only the circuit courts and the district courts had original juris-

diction in such cases. It doubtless so appeared to the commissioners who prepared the revision of the statutes of the United States, and to the committees of congress which examined the same before it was adopted by an act approved June 22, 1874, for in section 711 of the revision it is declared: "The jurisdiction vested in the courts of the United States in cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several states: * * * Sixth, of all matters and proceedings in bankruptcy." And in the act of June 22, 1874, amending the act of 1867, it was, as we have seen, deemed necessary to provide that the court having charge of the estate of any bankrupt may direct that any of the legal assets or debts of the bankrupt, as contradistinguished from equitable demands, shall, when such debt does not exceed $500, be collected in the courts of the state where such bankrupt resides having jurisdiction of claims of such nature and amount. The reason for this provision doubtless was that the general original jurisdiction of the federal courts was limited to controversies involving matter in value to the amount of $500 or more. In one case decided at the October term, 1875, it was assumed in the opinion of the court that the state courts may undoubtedly be resorted to in cases of ordinary suits for the possession of property or the collection of debts which had vested in the assignee in bankruptcy. Lathrop v. Drake, 91 U. S. 516. At the same term it was held that the jurisdiction conferred upon the federal courts for the benefit of an assignee in bankruptcy is concurrent with, and does not devest, that of the state courts in suits of which they had full cognizance. Eyster v. Gaff, Id. 521. As highly instructive, and pertinent to our inquiry, we quote some of the language of the opinion in the case last cited:

"The opinion seems to have been quite prevalent in many quarters at one time that the moment a man is declared bankrupt the district court which has so adjudged draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other court, except in so far as the circuit courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person who contested with the assignee any matter growing out of disputed rights of property or of contracts into the bankrupt court by the service of a rule to show cause, and to dispose of their rights in a summary way. This court has steadily set its face against this view. The debtor of a bankrupt, or the man who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not devested those courts of jurisdiction in such actions. If it has, for certain classes of actions, conferred a jurisdiction for the benefit of the assignee in the circuit and district courts of the United States, it is concurrent with, and does not devest, that of the state courts."

The same questions were involved in other cases pending in the supreme court, and at the next term (October term, 1876) were elaborately argued by counsel, closely scrutinized by the court, and fully discussed in its opinion, prepared and delivered by the same judge who had been the organ of the court in delivering its opinion in Lathrop v. Drake; and the doctrine which was assumed in the opinion in that case, and which was distinctly held in Eyster v. Gaff, was adhered to, and the general principle was announced that, where jurisdiction may be conferred on the United States courts, it may be made

exclusive where not so by the constitution itself, but, if exclusive jurisdiction be neither express nor implied, the state courts have concurrent jurisdiction whenever, by their own constitution, they are competent to take it. Claflin v. Houseman, 93 U. S. 130. By the second section of the act of July 1, 1898, the district courts, as courts of bankruptcy, are invested with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings in vacation, in chambers, and during their respective terms, to "(7) cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided." It is provided by section 23:

"(a) The United States circuit courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupt and such adverse claimants.

"(b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant."

By section 67e it is provided that all conveyances, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt, under the provisions of this act, subsequent to the passage of this act, and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned, or incumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt, and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same, by legal proceedings or otherwise, for the benefit of the creditors.

It is provided by section 26a:

"The trustee may, pursuant to the directions of the court, submit to arbitration any controversy arising in the settlement of the estate."

Section 27a:

"The trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate."

By clause 3 of section 2, the courts of bankruptcy have authority to "appoint receivers or the marshals, upon application of parties in interest, in case the court shall find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified. * * *"

By section 3e it is provided:

"Whenever a petition is filed by any person for the purpose of having another adjudged a bankrupt and an application is made to take charge of and hold the property of the alleged bankrupt, or any part of the same, prior to the adjudication and pending a hearing on the petition, the petitioner or applicant shall file in the same court a bond with at least two good and sufficient sureties who shall reside within the jurisdiction of said court, to be approved by the court or the judge thereof, in such sum as the court shall direct, conditioned for the payment, in case such petition is dismissed, to the respondent, his or her personal representatives, all costs, expenses, and damages occasioned by such seizure, taking, and detention of the property of the alleged bankrupt. If such petition be dismissed by the court or withdrawn by the petitioner the respondent or respondents shall be allowed all costs, counsel fees, expenses, and damages occasioned by such seizure, taking, or detention of such property. Counsel fees, costs, expenses, and damages shall be fixed and allowed by the court, and paid by the obligors in such bond."

Section 69a provides:

"A judge may, upon satisfactory proof, by affidavit, that a bankrupt against whom an involuntary petition has been filed and is pending has committed an act of bankruptcy, or has neglected, or is neglecting, or is about to so neglect his property, that it has thereby deteriorated, or is thereby deteriorating, or is about thereby to deteriorate in value, issue a warrant to the marshal to seize and hold it subject to further orders. Before such warrant is issued the petitioners applying therefor shall enter into a bond in such an amount as the judge shall fix, with such sureties as he shall approve, conditioned to indemnify such bankrupt for such damages as he shall sustain in the event such seizure shall prove to have been wrongfully obtained."

Trustees are vested, by operation of law, with the title of the bankrupt as of the date he was adjudged a bankrupt, with exceptions not necessary to notice. Section 70. Trustees thus vested with title are charged to "collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estate as expeditiously as is compatible with the best interest of the parties in interest." Section 47a, cl. 2. And receivers or the marshal may be appointed to discharge the duties of trustees until trustees are appointed.

We have thus grouped together the provisions of the present law which appear to bear on the subject of our inquiry. We have noticed in the opening part of this opinion the extensive and apparently exclusive jurisdiction that was given by the act of 1867 to the national courts over the subject of proceedings in bankruptcy and of cases arising out of such proceedings. Under the present act, if the bankrupt has his principal place of business, resides, or has his domicile in the United States, the adjudication of his bankruptcy and the proceedings therein must be in the district where he has so had his principal place of business, his residence, or his domicile for the preceding six months, or the greater portion thereof. The general rule is that a person can be sued in the United States courts only in the district whereof he is an inhabitant, and no suit can be brought in those courts unless the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000. It is therefore apparent that, as a general rule, all controversies at law and in equity, as distinguished from proceedings in bankruptcy between trustees, as such (or other duly appointed and empowered representatives of the bankrupt's estate), and adverse claimants concerning the property acquired or claimed by the trustees (or other duly appointed and empowered rep-

resentatives of the estate), which cannot be, or are not, adjusted by negotiation, arbitration, or compromise, must be abandoned by the trustees or adjudicated in the state courts, unless by consent of the proposed defendant suit can be brought in a United States court. If we concede or assume that the making of a deed of general assignment within four months of the adjudication in bankruptcy, which, by the express terms of the law, is an act of bankruptcy, wholly invalidates the deed, so that no title can pass thereby, as against the grantor's creditors, no matter what may be its terms or the avowed and apparent intent of the parties as shown by the deed (a concession which we are not now prepared to make and do not make, except for the purposes of the argument), the property and assets thereby attempted to be conveyed are precisely such assets and estate as it is made the duty of the trustee to recover and reclaim "by legal proceedings, or otherwise." Whatever the words "or otherwise" may embrace, it can hardly be seriously contended that they embrace such summary proceedings in bankruptcy as the issuance of a special warrant to the marshal to seize the goods, and the service of a rule upon the claimant to come before the court of bankruptcy and render an account, and make restitution for the value of any portion of such goods so attempted to be transferred to him which have been sold or otherwise disposed of by him. Such a construction would render more than nugatory surplusage the language, "by legal proceedings." If, therefore, we were restricted in our view to the terms of section 67e, it would clearly appear therefrom that, "by legal proceedings," must be intended controversies at law and in equity, as distinguished from proceedings in bankruptcy. But our view is not limited to the terms of section 67e. Conceding that the deed of assignment is invalid, and that no title passed to the assignee, or from him to the adverse claimant, as against the grantor's creditors, then such title as the bankrupt had at the time of making the assignment vested fully in the trustee, and might and doubtless often would be surrendered to him on demand. If such demand was refused, the act itself, as we have seen, provides for arbitration or compromise of the controversy. If these fail, and resort must be had to legal proceedings, the adverse claimant is entitled to his day in court, and in that court in which the bankrupt could have brought suit against him for the recovery of the property and assets. The fact that the bankrupt might be estopped and fail of securing a recovery in no manner changes the aspect of the question as to the court in which a suit for such recovery could be brought by him. He would have a right to sue and to show, if he could, that title did not pass by the making and delivery of the deed. That is precisely what the trustee has to show, or, to state it more guardedly, the converse of that is precisely what the adverse claimant has the right to try to show, namely, that title did pass to him under the deed and by the subsequent action of the assignee.

As already intimated, no question as to the validity or invalidity of the title of Bernheimer to the goods which he claims to have acquired from the assignee under the deed of assignment is now before us, or in any manner to be concluded or affected by what we decide, or what we say in deciding the question of law that we are considering and

which we stated at the opening of this opinion to be, did the district court, as a court of bankruptcy, have jurisdiction to try the title to the goods involved in this controversy by summary proceedings, seizure of the goods, and a rule to account entered against the adverse claimant? It seems clear to us that, under the act of 1867, the district courts, as courts of bankruptcy, were not invested with jurisdiction to proceed in that way in such cases as this, and that the whole tenor of the present law forbids the assumption and exercise of such jurisdiction.

We are now to consider more directly the question presented by the motion to dismiss. By the act to establish circuit courts of appeals, this court has appellate jurisdiction to review by appeal or by writ of error final decision in the district courts in all cases other than those in which appeals or writs of error may be taken direct to the supreme court, unless otherwise provided by law. Appeals may also be taken to this court in the same cases from certain interlocutory orders or decrees rendered by the district court. By section 25a of the present bankruptcy law, appeals may be taken in equity cases in bankruptcy proceedings from the courts of bankruptcy to this court in the following cases, to wit: (1) From a judgment adjudging or refusing to adjudge the defendant a bankrupt; (2) from a judgment granting or denying a discharge; and (3) from a judgment allowing or rejecting a debt or claim of $500 or over. Such appeal shall be taken within 10 days after the judgment appealed from has been rendered, and may be heard and determined by this court in term time or vacation, as the case may be. The judgment, order, or decree appealed from in this case is not embraced in either of the three classes of cases as just recited from the statute. It was not rendered on an original independent bill in equity, nor in a proceeding ancillary thereto. If considered in reference alone to its terms, its provisions for being put into immediate execution, if not in effect self-executing, give it the elements of a final decree, within the statutes and decisions under which appeals are taken from decrees in ancillary proceedings in an equity suit. We do not, however, consider it necessary in this case to decide whether an appeal can be taken from that judgment as from a final decree in equity.

Section 24b provides:

"The several circuit courts of appeals shall have jurisdiction in equity, either interlocutory or final, to superintend and revise in matter of law the proceedings of the several inferior courts of bankruptcy within their jurisdiction. Such power shall be exercised on due notice and petition by any party aggrieved."

The second section of the act of 1867 provided that the several circuit courts of the United States, within and for the districts where the proceedings in bankruptcy shall be pending, shall have a general superintendence and jurisdiction of all cases and questions arising under the act; and, except when special provision is otherwise made, may, upon bill, petition, or other proper process of any party aggrieved, hear and determine the case as a court of equity. The powers and jurisdiction hereby granted may be exercised either by said court or by any justice thereof in term time or vacation. By section 8 of that

act, it was provided that appeals may be taken from the district court to the circuit court in four classes of cases named, but that no appeal shall be allowed unless it is claimed and notice given thereof within 10 days after the entry of the decree or decision appealed from. In a case presented to the circuit court in which Chief Justice Chase was at the time presiding, it appeared that certain judgments or orders were rendered by the district court on the 16th of March, 1869; that the petitioners, as soon as these orders came to their knowledge, prayed an appeal in the name and with the approval of the assignees, and immediately gave notice of their appeal. The time for filing the bond on appeal was extended by the order of the district judge until the 18th of April, and on the 14th an order was passed showing that the assignees had filed their bond in the penalty of $10,000. On the 6th of May, the assignees informed the counsel for the petitioners that they would not allow the use of their names in the prosecution of this appeal. "The petitioners therefore ask [the date of presenting their petition does not appear in the opinion] in consideration of the surprise occasioned to them by this information, and also upon the ground that no appeal from the order of the district judge in such a case as that before him is allowed by the act, that the court will give them leave to file their petition now presented, and grant them appropriate relief." The chief justice reviewed the provisions of the statute, and held that the order mentioned in the petition was one from which no appeal could be taken, and drew the inevitable conclusion "that it is one which may be reviewed in the exercise of the power of general superintendence, or that it cannot be reviewed at all." He then proceeds to discuss the power of general superintendence conferred on the circuit courts, and concludes his review thereof thus:

"The exercise of this general jurisdiction is not placed by the act under specific regulations and restriction like the proceeding by appeal or writ of error. It was doubtless thought most advisable to leave its regulation to the discretion of the court and to the rules to be prescribed by the supreme court. As yet the supreme court has prescribed no rule concerning it, nor has this court."

Leave was granted to file the petition. In re Alexander, 3 N. B. R. 6, Fed. Cas. No. 160.

The general orders in bankruptcy adopted and established by the supreme court, "under the powers conferred by the constitution and laws on the supreme court of the United States, and particularly by the act of congress approved July 1, 1898, entitled 'An act to establish a uniform system of bankruptcy throughout the United States,'" prescribe no rules or forms to guide or govern the exercise of this jurisdiction by the circuit court of appeals. If we may, or should, establish some rule or rules to regulate the same, we have not done so. In this connection we again quote the language of Chief Justice Chase in the case last cited:

"In the case before us, its exercise must depend on the sound discretion of this tribunal. Unreasonable delay in invoking the superintending jurisdiction should certainly not be allowed; nor, on the other hand, should such excessive rigor be exercised that the ends of justice will probably be defeated."

In the exercise of this discretion, we must, of course, keep in view the terms of the statute. It declares that the jurisdiction is in equity;

that it is either interlocutory or final, and to be exercised only in matter of law. It prescribes no mode other than that it shall be on due notice and petition of any party aggrieved. In the general orders in bankruptcy, above referred to, there are both rules and forms for the framing of petitions, but they relate to petitions as defined in section 1, cl. 20, which reads:

"'Petition' shall mean a paper filed in a court of bankruptcy with a clerk or deputy clerk by a debtor praying for the benefits of this act, or by creditors alleging the commission of an act of bankruptcy by a debtor therein named."

The words "due notice" do not prescribe the time or manner of giving the notice, or the parties to whom it is to be given. All the courts which are invested with appellate jurisdiction of controversies arising in bankruptcy proceedings are authorized to exercise their jurisdiction in term time or vacation, as the case may be. By rule 36 of general orders in bankruptcy it is provided that:

"Appeals from a court of bankruptcy to a circuit court of appeals * * * shall be allowed by a judge of the court appealed from or of the court appealed to, and shall be regulated, except as otherwise provided in the act, by the rules governing appeals in equity in the courts of the United States."

The right of appeal, as given by the statute, can neither be enlarged nor restricted by the district court or by this court. The regulation of appeals is a regulation of jurisdiction. It was not without purpose, therefore, that the exercise of the superintending jurisdiction of this court is not placed by the act under specific regulations and restrictions, like the proceeding by appeal or writ of error. It seems clear to us, from a consideration of the various provisions of the act, and particularly of the clause conferring superintending and revising jurisdiction on this court, that it was the intent of congress that the exercise of such jurisdiction could be easily invoked by any party aggrieved, and should be freely exerted by the circuit courts of appeals, without the hindrance of technical trammels. In analogy to the rule prescribed for allowing appeals, and to the practice in allowing writs of error in cases at law, the petition for revision may be presented to and allowed by a judge of the court of bankruptcy, or any one of the judges of this court. It should, with reasonable clearness, show the action of the court which it seeks to have revised in matter of law, and reasonable notice thereof should be given to the adverse party. The appeal prayed for, allowed, and perfected in this case, bringing up, as it does, the record of the pleadings, which present all the facts, either verified by the petitioning creditors, whom the appellee represents, and cannot be allowed to dispute, or averred by Bernheimer, and admitted by the demurrer, showing all of the action of the judge thereon, including the last order from which the appeal was taken, may embrace more than it was necessary to put into a petition for revision; but it clearly does embrace a sufficient statement of the facts and action of the court thereon sought to be revised in matter of law. No question has been raised, or can be raised, as to the sufficiency of the notice. It is apparent from the proceedings that the appeal was prayed for and allowed in open court, in the presence of all the parties or their attorneys, at the very instant that the judgment sought to be revised was announced. They thus had, or must be charged with, due

notice. We conclude that the motion to dismiss the proceedings in this court should not be granted.

We could, did we deem it necessary, permit the party aggrieved now to file his petition for the revision he seeks, and, upon due or reasonable notice thereof being given to all parties entitled thereto, proceed thereon, in the exercise of our jurisdiction. We have not deemed it necessary or meet in this case to have resort to that course, but have proceeded to consider the case on its merits, in like manner as if a formal petition had been presented, and due notice thereof given. We may not feel justified in exercising our discretion to the same extent in all cases which may be brought to us in the future. The proceedings in this case in the district court were had before the general orders in bankruptcy took effect, or had been widely published, and become generally known to parties or counsel, or the judges of the inferior courts. The provisions of the act with reference to appeals to this court and to obtaining the superintendence and revision it may exercise are, in a measure, new; and precedents under the former law, if they were uniform (which they are not), could not be safely followed. It appears from the record that the deed of assignment to Davidson was executed and delivered on October 29, 1898; that the assignee at once entered upon the execution of the trust, and, as required by the laws of the state of Alabama, filed in the proper state court an inventory of the property, which consisted mainly of the stock of goods in controversy in this proceeding, and appraisers were duly appointed, who appraised all the effects covered by the assignment, and made return thereof to the state court; that on November 7th certain creditors of Abraham filed their petition in the court of bankruptcy praying that Abraham be adjudged a bankrupt; that thereafter the same creditors filed another petition in that court, praying that Davidson be required to appear before the court, and show cause why he should not be restrained from selling the goods so assigned to him; that, in obedience to this order, he did appear and show cause satisfactory to the court; that the rule against him was discharged, and, the court declining to grant the restraining order, on the ground that the petition therefor was not sworn to, nor any bond given, dismissed the petition without prejudice; that thereupon Davidson, as assignee, proceeded to sell the goods for cash in the city of Montgomery; that Bernheimer bought the same for the price of $3,500, which he paid in cash, and went into immediate possession of the goods on November 17th; that, claiming to be the purchaser and owner of the goods, Bernheimer proceeded from day to day to sell portions of the same, in the regular course of business, from November 17th up to and during December 12th; that on December 12th the marshal seized, under the special warrant on that day issued out of the court of bankruptcy, that portion of the goods still remaining in Bernheimer's possession; that during the time Bernheimer was in the possession of the stock of goods he made sales thereof to the gross amount in value received therefor of $2,768.40; that at the time of his purchase from Davidson, Bernheimer bought from Abraham the exemptions allowed by the law of Alabama, the state of the bankrupt's domicile, amounting to the sum of $1,000; that during the time Bern-

heimer was making sale of the goods purchased from Davidson he paid out for clerks, insurance, and other necessary expenses the sum of $310.10, and returned to purchasers the sum of $12.50; that these three sums—$1,000 paid the bankrupt for his exemptions, the $310.10, and the $12.50, aggregating $1,322.60—leave a net balance of cash received by him from the sale of the goods purchased and received from Davidson of $1,445.80; that the goods seized are now in the custody of the marshal (the appellee), held for the benefit of creditors. The application of the petitioning creditors for the special warrant obtained in this case having been made on the same day, but after Abraham was adjudged a bankrupt, does not bring them within the letter of section 3e, nor of section 69a, the provisions whereof do not, therefore, literally denounce against them the penalty therein prescribed for wrongfully obtaining thereunder the seizure of the property of an alleged bankrupt; but, in the light of the construction which should be placed, and which we have placed, on the provisions of the bankrupt law, their application for the writ to seize, and the seizure thereunder of the goods in controversy, was a flagrant violation of the spirit of those provisions. Therefore, upon adjudging, as we do, that their application and the issuance of the writ thereon was wholly unwarranted, the seizure and holding of the goods unlawful, and that the possession thereof must be restored to the adverse claimant, it is our opinion that he should be allowed all costs, counsel fees, and damages occasioned by such seizure, taking, and detention of the property so adversely claimed and held by him; the counsel fees, costs, expenses, and damages to be fixed and allowed by the court of bankruptcy, and to be paid by the petitioning creditors; to secure the payment whereof Bernheimer should be allowed a lien on whatever distributive share they may be entitled to receive out of the bankrupt's estate. It is our duty to prevent the springing up of a practice that will extend summary process and proceedings in bankruptcy to controversies between trustees or other parties to the bankruptcy proceedings and adverse claimants. Under the act of 1867 such a practice was prevalent in many quarters at one time, but it rested on opinions taking a view of the provisions of that act against which, as we have seen, the supreme court steadily set its face. As we construe the provisions of the present law, they not only do not admit of such a view, or authorize such a practice, but carefully guard against it, and forbid it.

It is ordered and decreed that the order, judgment, and decree appealed from, rendered on December 24, 1898, be, and the same is hereby, reversed, and the cause is remanded to the district court sitting in bankruptcy, with instructions to dismiss the petition of the creditors of D. Abraham, bankrupt, filed against the appellant, Louis Bernheimer, on the 17th day of December, 1898, to vacate all orders made thereon, and to restore to the said Louis Bernheimer the goods taken from his possession, and thereafter proceed in accordance with the views expressed in this opinion, and as equity may require.

PARLANGE, District Judge (dissenting). The matter which the record in this case presents for decision is whether the creditors of the

bankrupt could proceed summarily in the court of bankruptcy to compel the purchaser at the sale of the bankrupt's property by the assignee to deliver the property or its proceeds to the court of bankruptcy. Incidentally, the right of the purchaser to appeal to this court is contested. I concur fully in the conclusion reached by this court on the matters just stated, and which are, in my opinion, the only matters before this court for decision. The able and exhaustive opinion of the court shows that the court of bankruptcy was devoid of jurisdiction when proceeding against the purchaser as it did, and that the state court is the proper forum to settle the dispute between the purchaser at the assignee's sale and the bankrupt's creditors. The opinion of this court also shows that the purchaser, in coming to this court, mistook his remedy. It is clear that he should have proceeded by petition, and not by appeal. I agree fully that the indulgence of this court in treating, of its own motion, the appeal as a petition, is just and proper for the reasons stated in the court's opinion. But I am constrained to dissent as to the intimation that the court of bankruptcy could not have taken possession of the bankrupt's estate prior to the sale, and while it was in the hands of the assignee; and I must further dissent from the direction to the court of bankruptcy to proceed to decree damages, counsel fees, and costs against the creditors. The question whether a court of bankruptcy has power to take the bankrupt's property from his assignee is not before this court. The circuit courts of appeals for the Second and Eighth circuits have, without a dissent, held that the court of bankruptcy may take the property from the assignee,[1] and both courts referred, in their own able opinions, to the equally able opinion of Judge Brown, in Re Gutwillig, 90 Fed. 475. The will of congress, in matters of bankruptcy, is paramount. On such a subject a state statute could not prevail, and it is difficult to comprehend how an individual may defeat, or even impede, the will of congress. The assignee is the bankrupt's agent. I do not see how the court of bankruptcy is deprived of power over the bankrupt's property, because it is found in the hands of the bankrupt's agent. But, be this as it may, it seems to me that the case before the court does not call in any manner for an opinion on the point, and that it would be wiser to defer a determination concerning it until it should come up as a contested issue.

It also seems to me that the court of bankruptcy should not be directed to proceed to impose damages, counsel fees, and costs on the creditors. There is no such demand before us, either in the pleadings or in the briefs. Litigants are usually careful to ask for all that they believe themselves to be entitled to, or that there is any probability of their recovering. They often ask too much, and very seldom, if ever, ask too little. While I agree fully, as has been already stated, that a proper indulgence has been shown the appellant in view of the inevitable uncertainty attendant upon the putting into operation of a new and complex law, I believe that some indulgence should also be shown the creditors, or, at least, this court should not be so rigorous towards them as to impose upon them damages, etc., which have not been asked for.

[1] In re Gutwillig, 92 Fed. 337; Davis v. Bohle, Id. 325.

I do not understand this court to hold that the creditors cannot recover the bankrupt's property or its proceeds from the purchaser. This court holds that such recovery cannot be had by summary proceeding in the court of bankruptcy. It is evident that this court would not undertake to say what the state court should decide if a suit is brought there to recover the property or its proceeds from the purchaser. It may be that the state court will take the view that the sale is voidable.

Section 69 and section 3e, referred to in the opinion of the court, both relate to bonds given to secure an alleged bankrupt against damages which may result to him from the seizure of his property. Neither section is intended to secure a person situated as is the purchaser in this case. No bond was given under either section. The bankrupt is not complaining of damages to his property. If bonds had been given under either of the sections just mentioned, he alone could have availed himself of them.

Furthermore, I am far from being certain that the court of bankruptcy has jurisdiction to try the question of damages. As the court of bankruptcy has no jurisdiction to entertain the proceeding of the creditors, it is difficult to see how that court has jurisdiction to inflict damages in that same matter. The supreme court has said that a court which has no jurisdiction of a case cannot even award costs, or order execution for them to issue. Mayor v. Cooper, 6 Wall. 247; Smith v. Whitney, 116 U. S. 175, 6 Sup. Ct. 570; Elk v. Wilkins, 112 U. S. 98, 5 Sup. Ct. 41. Under the very views so ably expressed by this court as to the restricted powers of the court of bankruptcy, I have grave doubts, to say the least, with regard to the power of the court of bankruptcy to cause to be framed and to determine an issue between the creditors and the purchaser as to the damages.